# Service by Federal Officials on the Board of Directors of the Bank for International Settlements

18 U.S.C. § 208(a) does not prohibit the Chairman of the Federal Reserve Board and the President of the Federal Reserve Bank of New York from serving in their official capacities on the Board of Directors of the Bank for International Settlements

May 6, 1997

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
FEDERAL RESERVE BOARD

You have asked whether, absent a waiver, 18 U.S.C. § 208(a) would forbid the Chairman of the Federal Reserve Board and the President of the Federal Reserve Bank of New York from serving in their official capacities on the Board of Directors of the Bank for International Settlements ("BIS"). We believe that the statute would not forbid this service.

The BIS was formed in 1930 "for the main purpose of collecting and transferring German reparations." Charles J. Woelfel, *Encyclopedia of Banking and Finance* 95 (10th ed. 1994). It is now "the major forum for consultation, cooperation, and information exchange among central banks, including member central banks of thirty-two countries of which eight are on the BIS Board." Letter for Hon. Donald W. Riegle, Jr., Chairman, Committee on Banking, Housing and Urban Affairs, United States Senate, from Alan Greenspan, Chairman, Federal Reserve Board at 1 (June 20, 1994). Central banks own about 85 percent of the BIS's stock, with the remaining 15 percent in the hands of private shareholders. *Encyclopedia of Banking and Finance* at 96. Although the BIS is a profit-making institution and declares an annual dividend, "[t]he right of representation and voting, in proportion to the number of shares subscribed by each country, may be exercised by the central bank of that country, or by its nominee, or in cases where the central bank does not nominate an institution, the BIS may designate a financial institution not objected to by the central bank of the country in question." Federal Reserve Board Staff, *Background Note on the Federal Reserve's Relationship with the Bank for International Settlements* at 11 (June 1994).

The BIS reserves two seats on its Board for the central bank of the United States, but the Federal Reserve Board did not take up these seats until 1994. At that time, the Chairman assumed one seat and the President of the Federal Reserve Bank of New York assumed the other.

Under 18 U.S.C. § 208(a) (1994), an officer or employee of the executive branch may not participate personally or substantially in any particular matter in which he or she has a financial interest. The statute also imputes certain other financial interests to the officer and employee. These interests include those of any "organization in which [the officer or employee] is serving as . . . director."

88

An opinion of our office, issued November 19, 1996, concluded that 18 U.S.C. § 208(a) "would prevent a government employee from serving on the board of directors of an outside organization in his or her official capacity, in the absence of: (1) statutory authority or a release of fiduciary obligations by the organization that might eliminate the conflict of interest, or (2) a waiver of the requirements of § 208(a), pursuant to 18 U.S.C. § 208(b)." *Service on the Board of Directors of Non-Federal Entities by Federal Bureau of Investigation Personnel in Their Official Capacities*, 20 Op. O.L.C. 379, 379 (1996). We reasoned that an "employee performs *official* duties for [his or her agency] in serving on the board of the outside organization" and that, therefore, "§ 208 would apply to any action the employee takes *as a director* that affects the financial interests of the outside organization." *Id.* at 380. However, where Congress has authorized the service by statute, the official "serves . . . in an ex officio rather than personal capacity," owes a duty only to the United States, and does not violate § 208. *See Applicability of 18 U.S.C. § 208 to Proposed Appointment of Government Official to the Board of Connie Lee*, 18 Op. O.L.C. 136, 138 (1994).

On the particular facts here, we believe that the Chairman of the Federal Reserve Board and the President of the Federal Reserve Bank of New York have statutory authority to serve on BIS's Board and that § 208 thus does not preclude or affect that service. The Federal Reserve Board has broad statutory authority over negotiations between elements of the central banking system in the United States and foreign banks:

> The Board of Governors of the Federal Reserve System shall exercise special supervision over all *relationships and transactions of any kind* entered into by any Federal reserve bank with any foreign bank or banker, or with any group of foreign banks or bankers, and all such relationships and transactions shall be subject to such regulations, conditions, and limitations as the Board may prescribe. No officer or other representative of any Federal reserve bank shall conduct negotiations of any kind with the officers or representatives of any foreign bank or banker without first obtaining the permission of the Board of Governors of the Federal Reserve System. *The Board of Governors of the Federal Reserve System shall have the right, in its discretion, to be represented in any conference or negotiations by such representative or representatives as the Board may designate.*

12 U.S.C. § 348a (1994) (emphasis added). The "special supervision" provided for by § 348a extends not only to transactions but also to "relationships," which are subject to conditions prescribed by the Board of Governors. Relationships with *groups* of foreign banks are specifically covered. The Board of Governors, more-

over, possesses not only the power to regulate the specified international activities of the member banks but also the right to take part in such international activities in its own behalf.

To be sure, we ordinarily might well find that a provision of this nature would not amount to such statutory authority for service on an outside board as would overcome 18 U.S.C. § 208(a). The specific focus of the provision is the Board of Governors' control over Federal reserve banks, rather than its own authority to enter into "relationships" with foreign banking organizations. Furthermore, the provision does not expressly refer to directorships.

Nevertheless, there is an additional consideration that weighs in favor of reading § 348a as authority for the Chairman and the President of the Federal Reserve Bank of New York to serve on BIS's Board. That service is a means by which the United States negotiates with foreign governments, through their central banks. As President Bush suggested in a signing statement dealing with a provision that would have required Federal banking agencies to hold certain discussions with the BIS, the President has the power to control such communications because they are an exercise of his "constitutional authority to conduct the international relations of the United States." *Statement on Signing the Federal Deposit Insurance Corporation Improvement Act of 1991*, 2 Pub. Papers of George Bush 1649, 1650 (1991).

In this area, the President has broad latitude. *See, e.g., Department of Navy v. Egan*, 484 U.S. 518, 529 (1988) (the Supreme Court has "recognized 'the generally accepted view that foreign policy was the province and responsibility of the Executive'") (quoting *Haig v. Agee*, 453 U.S. 280, 293–94 (1981)); *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 705–06 n.18 (1976) ("[T]he conduct of [foreign policy] is committed primarily to the Executive Branch . . . ."); *United States v. Louisiana*, 363 U.S. 1, 35 (1960) (the President is "the constitutional representative of the United States in its dealings with foreign nations"). *See also Earth Island Inst. v. Christopher*, 6 F.3d 648, 652–54 (9th Cir. 1993); *Ward v. Skinner*, 943 F.2d 157, 160 (1st Cir. 1991) (Breyer, J.) ("[T]he Constitution makes the Executive Branch . . . primarily responsible" for the exercise of "the foreign affairs power."), *cert. denied*, 503 U.S. 959 (1992); *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 210 (D.C. Cir. 1985) (Scalia, J.) ("[B]road leeway" is "traditionally accorded the Executive in matters of foreign affairs."). For example, statutory qualifications for officials who negotiate for the United States are suspect. *See Constitutionality of Statute Governing Appointment of United States Trade Representative*, 20 Op. O.L.C. 279 (1996). Although we do not doubt that Congress may impose conflict of interest restrictions on those who engage in such negotiations, the breadth of the President's power counsels a broad reading of congressional *authorization* for particular means by which the power may be exercised. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320–22 (1936).

Here, Secretary of State Christopher expressed the view "that active participation of the Federal Reserve on the BIS Board will serve U.S. foreign policy interests" and declared that "Federal Reserve membership on the BIS Board has the full support of the Department of State." Letter for Alan Greenspan, Chairman, Board of Governors, Federal Reserve System, from Warren Christopher, Secretary of State (June 15, 1994). The directorships in question, like the United States' membership in other international bodies, is a mode of conducting our foreign relations. Given this setting, we believe that 12 U.S.C. § 348a constitutes statutory authority for holding the directorships, notwithstanding 18 U.S.C. § 208(a).

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*